JAMES DONOVAN v. EMIL F. SELL.[1]

April 16, 1896.

Nos. 9853—(96).

Chattel Mortgage—Possession by Mortgagee.

In September, 1893, the plaintiff, as security for a debt payable in September, 1894, executed to defendant a mortgage on crops of grain to be raised on the plaintiff's farm during the season of 1894. By the terms of the mortgage the mortgagor was to remain in possession as long as its covenants and conditions were fulfilled, but it was also provided that, if the mortgagor should make any attempt to dispose of the property, thereupon the mortgagee should have the right to take possession. Shortly afterwards the plaintiff, as security for a debt payable in October, 1894, executed another chattel mortgage of like terms on the same property to another person. Held, that the execution of the second mortgage was not an attempt to dispose of the property within the meaning of the provisions of the first mortgage.

Appeal by defendant from an order of the district court for Renville county, Webber, J., denying a motion for a new trial. Affirmed.

Somerville & Olsen, for appellant.
McClelland & Tifft and Thos. E. Boylan, for respondent.

BUCK, J. There are 13 assignments of error alleged by the appellant, but, after a careful examination of all of them, we find only one material question which we deem it necessary to consider. Several of the alleged errors are involved in this question,

1 Reported in 66 N. W. 722.

which relates to the giving by the same party of a second chattel mortgage covering the same property described in the first mortgage, and also including certain other personal property.

On September 27, 1893, the plaintiff, Donovan, executed and delivered to the defendant, Sell, a promissory note for the sum of $117.61, payable September 15, 1894, drawing interest at the rate of 10 per cent. per annum, and to secure the payment the plaintiff at the same time executed to the defendant a chattel mortgage upon certain crops of wheat, oats, barley, corn, and flax which might thereafter be sown or planted during the year 1894 upon the land of plaintiff, situate in Renville county, Minnesota. This mortgage provided that, if the crops were not properly sown, cultivated, and cared for by the mortgagor, then the mortgagee might do this work, and market the crops, and deduct the expense out of the proceeds, and apply the balance thereof to the payment of the note and mortgage. This mortgage also contained this condition:

"If any attempt shall be made by the said mortgagor or any other person to dispose of or injure said property, or to remove said property, or any part thereof, from said county of Renville, or if said mortgagor does not take proper care of said property, or if said mortgagee shall at any time deem himself insecure, then thereupon and thereafter it shall be lawful, and the said mortgagor hereby authorizes said mortgagee, his executors, administrators, or assigns, or his authorized agent, to take said property wherever the same may be found, and hold or sell and dispose of the same and all equity of redemption at public auction, with notice as provided by law, and on such terms as said mortgagee or his agent may see fit, and said mortgagee may become the purchaser of said property at said sale."

The mortgagor was also, by the terms of the mortgage, to remain in possession of the property as long as its conditions were fulfilled. On September 28, 1893, the plaintiff, Donovan, executed a second chattel mortgage to one Stoddard upon the same property, and also upon nine hogs and one colt, to secure the payment of a note for $175, of the same date, drawing 7 per cent. interest per annum, payable October 1, 1894, which plaintiff then made to said Stoddard. No question is made as to priority of lien by reason of the filing of the second mortgage a few hours prior to that of the first mortgage, but both parties assume that plaintiff's mortgage is, and always has been, the prior mortgage.

The defendant, alleging that there was a default in the con-

ditions of said mortgage, did, in the month of July, 1894, enter upon the plaintiff's premises where the crops were grown, and took possession of the wheat, a large part of which had been harvested, and the remainder was cut and harvested by the defendant, and the whole thereof, amounting to about 400 bushels, was sold by the defendant upon foreclosure sale of the mortgage for $184, and the entire proceeds applied to the payment of the note and expenses. While the defendant testified that he deemed this indebtedness insecure, not only by reason of the plaintiff giving the second mortgage, but for the reason that proper care was not taken of the crops by the plaintiff, yet it is quite evident that the principal ground for deeming the debt insecure was the fact that the plaintiff had given a second mortgage, which included the property described in the first mortgage. After the sale of the property by the defendant, the plaintiff brought this action in conversion, for the value of the wheat, and upon trial he recovered a verdict for $63.63. As we understand the record, the defendant was allowed the amount of his note and mortgage, and the verdict was rendered for the value of the wheat, less the amount of the note and mortgage.

The question, then, arises whether the giving of the second mortgage upon the property included in the first was such a violation of its conditions as to justify the defendant in deeming the indebtedness insecure, and thus authorizing him to take possession of the property, and sell it under foreclosure proceedings.

G. S. 1894, § 4145, reads as follows: "No mortgagee, nor any one claiming under him, shall have any right, arbitrarily or without just cause, based upon the actual existence of facts, to declare any of the conditions or stipulations of a mortgage broken prior to the time of default in the payment of such mortgage, or prior to the time when the conditions of such mortgage should be performed." This law was passed in 1879, and was intended to prevent the heartless exactions which were frequently and arbitrarily exercised by mortgagees deeming themselves insecure, without the existence of any facts or reasonable grounds for such belief. Its just and humane provisions have been of great practical benefit to the debtor class of this state. While the question under consideration is to a great extent one of law, yet the facts introduced in evidence

in this case by both parties warrant us in thus briefly alluding to this statutory provision.

This proceeding to foreclose the mortgage was commenced about two months prior to the maturity of the note which it secured, and the note secured by the second mortgage was not due until two weeks after the maturity of the first note. There was no attempt on the part of the mortgagor to remove the property, and it does not appear that the giving of the second mortgage was intended to injure or defraud the mortgagee or lessen his security, nor was there any attempt made by the second mortgagee to enforce any rights under his mortgage. The defendant knew of the execution of the second mortgage the very day it was made, and waited 10 months thereafter before he deemed his security in danger, and this was done without a change in the status or condition of the parties or property.

We are of the opinion that he acted arbitrarily, without the existence of any facts which would constitute a reasonable ground for his deeming himself insecure, and that the provision in the mortgage, viz. if he shall attempt to dispose of said property, was not, under the facts in this case, violated by the mortgagor giving the second mortgage. This phrase, usually found in chattel mortgages, is to be understood as the doing of an act by the mortgagor whereby he attempts to put the mortgaged property beyond the reach of the mortgagee, or embarrass him in readily securing possession thereof in case of default. It must be some act attempted by the mortgagor to prejudice or jeopardize the rights of the mortgagee. The second mortgage expressly provided that Donovan should remain in possession of the mortgaged property, and, if he was not in default in any of the provisions, Stoddard had no right to take or interfere with the property until after Sell's mortgage became due. There is no pretense that there was any such default, or that Stoddard ever attempted to exercise any dominion over the mortgaged property. To hold that a party may not in good faith give a second mortgage on the same property in the absence of any prohibitory clause in the first mortgage against so doing, would frequently be productive of great harm and injustice.

The order denying the motion for a new trial is therefore affirmed.